State of Maryland, et al. v. Valerie Rovin, No. 29, September Term, 2020

**SUMMARY JUDGMENT – PROSECUTORIAL IMMUNITY – JUDICIAL IMMUNITY – MARYLAND TORT CLAIMS ACT – STATE PERSONNEL IMMUNITY –** Court of Appeals held that trial court was correct in concluding that there was no genuine dispute of material fact as to prosecutors' entitlement to absolute common law immunity in form of prosecutorial immunity and that grant of summary judgment in favor of prosecutors was warranted as matter of law. Because prosecutors are entitled to prosecutorial immunity, State cannot be held civilly liable for their actions. As such, trial court was correct in granting summary judgment in favor of two prosecutors and State as to any action in complaint alleged to have been taken by prosecutors. Court of Appeals held that law enforcement officers are not entitled to absolute immunity in form of prosecutorial immunity. Similarly, Court of Appeals held that absolute immunity in form of judicial immunity does not apply to actions of officers alleged in complaint. Court declined to extend judicial immunity under Keller-Bee v. State, 448 Md. 300, 138 A.3d 1253 (2016), to officers. Court of Appeals held, however, that State personnel immunity— form of statutory immunity—under Maryland Tort Claims Act ("MTCA") bars claims against prosecutors and officers in their individual capacities. As such, State does not have immunity under MTCA but whether State is liable for any actions taken by officers, who do not have absolute common law immunity, is matter to be resolved by further proceedings in trial court.

Court of Appeals declined Petitioners' request to apply Supreme Court's holding in Heien v. North Carolina, 574 U.S. 54 (2014), to officers' conduct in this case as Petitioners failed to raise issue regarding applicability of Heien in trial court and before Court of Special Appeals. Court of Appeals concluded that Petitioners did not raise, in petition for writ of *certiorari*, any issue, apart from applicability of common law and statutory immunities, as to claims for defamation and false light invasion of privacy. Petitioners' contention that Court of Special Appeals erred in reversing grant of summary judgment as to those claims on ground that one officer's statements were not false is not before Court.

As result of determinations, all of claims against State based on alleged actions of officers—*i.e*., false arrest, false imprisonment, malicious prosecution, violation of Article 24 of the Maryland Declaration of Rights, defamation, false light invasion of privacy, and intentional infliction of emotional distress—remain.

Circuit Court for Wicomico County
Case No. C-22-CV-17-000326

Argued: January 7, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 29

September Term, 2020

_____

STATE OF MARYLAND, ET AL.

v.

VALERIE ROVIN

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by Watts, J.
McDonald, J., concurs in the judgment.

_____

Filed: March 2, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case stems from a lawsuit brought by Valerie Rovin ("Ms. Rovin"), Respondent, against the State and the prosecutors and law enforcement officers who were responsible for charging her with juror intimidation and assault after she allegedly threatened the foreperson of a jury that had convicted her daughter of a criminal offense. The primary question presented in the case is whether a type of immunity—absolute common law judicial or prosecutorial immunity or statutory immunity under the Maryland Tort Claims Act ("the MTCA")—bars Ms. Rovin's claims against the State and the prosecutors and law enforcement officers who participated in her arrest and prosecution such that summary judgment was correctly granted in favor of all of them. We are also asked to determine whether the law enforcement officers can be civilly liable for an arrest (Ms. Rovin's) made pursuant to an arrest warrant based on a judicial officer's determination that probable cause existed for the arrest, where that determination was later held by a trial court to be based on an error of law.

Absolute immunity is "[a] complete exemption from civil liability, usu[ally] afforded to officials while performing particularly important functions, such as a representative enacting legislation and a judge presiding over a lawsuit." *Absolute Immunity*, Black's Law Dictionary (11th ed. 2019). One variety of absolute immunity is judicial immunity, which has been defined as the "immunity of a judge from civil liability arising from the performance of judicial duties." *Judicial Immunity*, Black's Law Dictionary (11th ed. 2019). Another form of absolute immunity is prosecutorial immunity, which has been defined as "[t]he absolute immunity of a prosecutor from civil liability for decisions made and actions taken in a criminal prosecution." *Prosecutorial Immunity*,

Black's Law Dictionary (11th ed. 2019).

Although judicial immunity and prosecutorial immunity are common law doctrines, see Gill v. Ripley, 352 Md. 754, 765-66, 724 A.2d 88, 94 (1999), another form of immunity is statutory. The General Assembly has created immunity for State personnel under certain circumstances. Md. Code Ann., State Gov't (1984, 2014 Repl. Vol.) ("SG") § 12-105, which is part of the MTCA, provides that "State personnel shall have the immunity from liability described under" Md. Code Ann., Cts. & Jud. Proc. (1974, 2020 Repl. Vol.) ("CJ") § 5-522(b). CJ § 5-522(b) provides:

> State personnel, as defined in § 12-101 of the State Government Article,[1] are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver.

The facts that gave rise to the question concerning immunities in this case are as follows. Later on the same day after the conclusion of a jury trial in which her daughter was found guilty of criminal charges, including drunk driving, Ms. Rovin went to the workplace of Robert Rovin ("Mr. Rovin"), who had served as the foreperson of the jury. (Mr. Rovin is not related to Ms. Rovin.) Ms. Rovin and Mr. Rovin have offered differing accounts of their encounter that day. Ms. Rovin has alleged that she and Mr. Rovin had a conversation, whereas Mr. Rovin has alleged that Ms. Rovin verbally assaulted him and threatened to have someone cause him bodily harm. In any event, after Ms. Rovin left, Mr.

---

[1] SG § 12-101(a) provides a list of fourteen categories of groups of individuals who are defined as State personnel.

Rovin called the Wicomico County Sheriff's Office to report the encounter. Deputy Sheriff Matthew Cook responded to the call. The next day, Mr. Rovin filed a petition for a peace order in the District Court of Maryland, sitting in Wicomico County, regarding Ms. Rovin's alleged conduct. The District Court denied the petition but advised that there is a statute making it a criminal offense to intimidate a juror and that Ms. Rovin may have committed a crime.

Deputy Cook consulted with the Office of the State's Attorney for Wicomico County, and was advised to apply for a statement of charges. Deputy Cook did so. A District Court Commissioner approved the application for a statement of charges and issued an arrest warrant for Ms. Rovin. Ms. Rovin was arrested, detained, and released on bond with a condition of electronic monitoring. The State filed a criminal information, which the State's Attorney for Wicomico County Matthew A. Maciarello[2] signed, charging Ms. Rovin with juror intimidation in violation of Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) ("CR") § 9-305(a) and second-degree assault. While Ms. Rovin's criminal case was pending, the Sheriff of Wicomico County, Michael Lewis, made statements about the case on the Sheriff's Office Facebook page and in the media. At a jury trial in Ms. Rovin's case, in which the State was represented by Assistant State's Attorney Richard Brueckner, approximately four months after Ms. Rovin's release on bond, the Circuit Court for Wicomico County granted a motion for judgment of acquittal as to both charges, upon

---

[2]Maciarello is no longer the State's Attorney for Wicomico County. At some point after his involvement in the events of the case, Maciarello was appointed a judge of the Circuit Court for Wicomico County.

finding that Ms. Rovin's interaction with Mr. Rovin did not constitute juror intimidation under CR § 9-305(a) or assault.

Subsequently, in the circuit court, Ms. Rovin sued the State, Maciarello, Assistant State's Attorney Brueckner, Sheriff Lewis, and Deputy Cook (together, "Petitioners")[3] for false arrest, false imprisonment, malicious prosecution, violation of Article 24 of the Maryland Declaration of Rights, false light invasion of privacy, defamation, and intentional infliction of emotional distress.  The State and prosecutors filed a motion to dismiss or for summary judgment.  The officers filed a separate motion to dismiss or for summary judgment.  After Ms. Rovin filed a request for production of documents, the State and prosecutors filed a motion for a protective order.  The circuit court granted the motion for a protective order, and granted summary judgment in favor of all of the Petitioners as to all of Ms. Rovin's claims.  The circuit court concluded, among other things, that Maciarello and Assistant State's Attorney Brueckner were entitled to prosecutorial immunity for all claims brought against them, which extended to the State as well, and that the prosecutors and the officers were entitled to qualified immunity.

Ms. Rovin appealed, and the Court of Special Appeals vacated the circuit court's judgment and remanded the case to the circuit court.  See Valerie Rovin v. State of Maryland, et al., No. 233, Sept. Term, 2018, 2020 WL 3265119, at *9 (Md. Ct. Spec. App. June 17, 2020).  The Court of Special Appeals reasoned that the circuit court abused its

---

[3]Ms. Rovin also sued the Wicomico County State's Attorney's Office and the Wicomico County Sheriff's Office, neither of which is a legal entity subject to suit or a Petitioner here.  See n.9 below.

discretion in precluding Ms. Rovin from engaging in discovery before granting summary judgment.  See id. at *1.  The Court of Special Appeals held that the circuit court erred in granting summary judgment because there was a genuine dispute of material fact as to whether the reason that the defendants pursued criminal charges against Ms. Rovin was that the circumstances justified doing so or that the defendants had an ulterior or otherwise inappropriate motive for doing so.  See id. at *9.  In this Court, the State filed a petition for a writ of *certiorari* on behalf of itself, Maciarello, Assistant State's Attorney Brueckner, Sheriff Lewis, and Deputy Cook, which this Court granted.  See State v. Rovin, 471 Md. 103, 240 A.3d 853 (2020).

Before us, Petitioners contend that absolute common law immunity and State personnel statutory immunity bar all of Ms. Rovin's claims.  Petitioners also argue that Ms. Rovin's claims arising from the officers' actions fail because the officers had a good faith belief that her conduct violated the juror intimidation statute and that her claims for defamation and false light invasion of privacy fail because she cannot establish the element of falsity that is required for both claims.  Ms. Rovin responds that the record is insufficient to demonstrate that any form of immunity bars her claims.  She also contends that whether the officers had a good faith belief that she violated the juror intimidation statute is a question of fact and argues that her claims for defamation and false light invasion of privacy are viable.

Upon careful consideration of the record and our case law, as to the immunity issue, we hold that the circuit court was correct in concluding that there was no genuine dispute of material fact as to Maciarello's and Assistant State's Attorney Brueckner's entitlement

to absolute common law immunity in the form of prosecutorial immunity, and that the grant of summary judgment in favor of the prosecutors was warranted as a matter of law as to all of Ms. Rovin's claims. Because Maciarello and Assistant State's Attorney Brueckner are entitled to prosecutorial immunity, the State is not civilly liable for their actions in this case. As such, the circuit court was correct in granting summary judgment in favor of the State, Maciarello, and Assistant State's Attorney Brueckner as to any action in the complaint alleged to have been taken by the prosecutors.

On the other hand, the officers, Sheriff Lewis and Deputy Cook, are not entitled to absolute common law immunity in the form of prosecutorial immunity. Similarly, the officers are not entitled to absolute common law immunity in the form of judicial immunity. We decline to extend judicial immunity under the holding in Keller-Bee v. State, 448 Md. 300, 138 A.3d 1253 (2016), to the officers. State personnel statutory immunity under the MTCA, however, bars Ms. Rovin's claims against the officers, as well as the prosecutors, in their individual capacities. As such, the State does not have immunity under the MTCA, but whether the State is liable for any actions taken by Deputy Cook and Sheriff Lewis, who do not have absolute common law immunity, is a matter to be resolved by further proceedings in the circuit court.

As to the second issue, we decline Petitioners' request that we apply the Supreme Court's holding in Heien v. North Carolina, 574 U.S. 54 (2014), to the officers' conduct in this case as Petitioners failed to raise an issue regarding the applicability of Heien in the circuit court and before Court of Special Appeals. In addition, because Petitioners did not raise, in the petition for a writ of *certiorari*, any issue, apart from the applicability of

common law and statutory immunities, as to the claims for defamation and false light invasion of privacy, Petitioners' contention that the Court of Special Appeals erred in reversing the grant of summary judgment as to those claims on the ground that statements made by Sheriff Lewis were not false is not before this Court. See Md. R. 8-131(b)(1) ("Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals . . . , the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals."). These issues may, of course, be considered by the circuit court on remand.

For all of these reasons, we reverse the Court of Special Appeals's judgment vacating the grant of summary judgment in favor of Maciarello and Assistant State's Attorney Brueckner and the State with respect to any action in the complaint alleged to have been taken by Maciarello and Assistant State's Attorney Brueckner. We also reverse the Court of Special Appeals's judgment vacating the grant of summary judgment in favor of Sheriff Lewis and Deputy Cook as the officers are entitled to State personnel immunity under the MTCA. We affirm the judgment of Court of Special Appeals vacating the grant of summary judgment in favor of the State as to any action in the complaint alleged to have been taken by the officers, Sheriff Lewis and Deputy Cook. As a result of these determinations, all of the claims against the State based on the alleged actions of Sheriff Lewis and Deputy Cook with respect to the claims of false arrest, false imprisonment, malicious prosecution, violation of Article 24 of the Maryland Declaration of Rights, defamation, false light invasion of privacy, and intentional infliction of emotional distress

remain.

## BACKGROUND

### The Complaint

On July 26, 2017, in the circuit court, Ms. Rovin filed a seven-count complaint.  Ms. Rovin sued Maciarello, Assistant State's Attorney Brueckner, Sheriff Lewis, and Deputy Cook in their "official capacities" as the State's Attorney for Wicomico County, an Assistant State's Attorney for Wicomico County, the Sheriff of Wicomico County, and a Deputy Sheriff of Wicomico County, respectively.  Ms. Rovin also identified the State of Maryland, the Wicomico County Sheriff's Office, and the Office of the State's Attorney for Wicomico County as defendants in the lawsuit.  In the complaint, Ms. Rovin alleged seven counts—false arrest, false imprisonment, malicious prosecution, violation of Article 24 of the Maryland Declaration of rights, defamation, false light invasion of privacy, and intentional infliction of emotional distress.

In a section of the complaint labeled "Factual Background," Ms. Rovin alleged the following.  In or around June 2014, she and Mr. Rovin met for the first time.  When they met, the two discussed the fact that they have the same last name, as well as that of a man named Bill Rovin, who had moved to Nicaragua, and was possibly a relative of both Ms. Rovin and Mr. Rovin.  Ms. Rovin indicated, however, that, to her knowledge, she and Mr. Rovin are not related.  At some point, on Facebook, Mr. Rovin became friends with one of Ms. Rovin's daughters.

Approximately one year later, on June 16, 2015, Mr. Rovin served as the jury foreperson when another one of Ms. Rovin's daughters was tried for driving under the

influence of alcohol and related traffic offenses in the Circuit Court for Wicomico County. The trial lasted one day and concluded with Ms. Rovin's daughter being found guilty. Later on the same day, Ms. Rovin visited Mr. Rovin at his workplace. Ms. Rovin acknowledged that she was upset that the jury had found her daughter guilty and that a "fellow Rovin" had served as the foreperson of the jury. Ms. Rovin denied that she initiated physical contact with Mr. Rovin or threatened that she would physically harm him. After Ms. Rovin left, Mr. Rovin telephoned the Sheriff's Office. Deputy Cook responded to the call. The next day, in the District Court of Maryland, sitting in Wicomico County, Mr. Rovin filed a petition for a peace order, which the District Court denied. At the hearing for the peace order, Mr. Rovin stated that the State's Attorney's Office had advised him to apply for the peace order.

On June 18, 2015, an arrest warrant was issued for Ms. Rovin. The warrant stated that the arrest was for the charge of intimidating a juror in violation of CR § 9-305(a). The arrest warrant was based on an application submitted by Deputy Cook. Ms. Rovin stated that prior to obtaining the warrant, Deputy Cook consulted with Maciarello and Assistant State's Attorney Brueckner as to the charge. Later on the same day, deputies of the Sheriff's Office arrested Ms. Rovin at her home, and she was detained at the Wicomico County Detention Center over night from June 18 through 19, 2015.

Ms. Rovin alleged that after her arrest, in statements to the general public and the media, and in posts on the Facebook page of the Sheriff's Office, Sheriff Lewis made false and defamatory statements by asserting that she committed a crime when she had not and saying that her conduct was egregious.

On June 19, 2015, in Ms. Rovin's criminal case, the District Court conducted a bail review hearing. At the bail review hearing, Clay Groton IV, an Assistant State's Attorney for Wicomico County, told the District Court that according to Assistant State's Attorney Brueckner, Ms. Rovin had threatened to kill Mr. Rovin "if the jury found her daughter guilty." Ms. Rovin alleged that Assistant State's Attorney Groton's statement was false, and that he made it in an attempt to have the District Court restrict her liberty pending trial. The District Court set bail at $30,000 and ordered Ms. Rovin to pay bail in its entirety, to be subject to pretrial supervision and electronic monitoring using an ankle bracelet, and to disconnect her cell phone and not use a computer pending trial. On the same day as the bail review hearing, Ms. Rovin was released from detention.

According to Ms. Rovin, on July 9, 2015, under the auspices of Maciarello and Assistant State's Attorney Brueckner, the Office of the State's Attorney filed in the circuit court a criminal information, charging her with juror intimidation and second-degree assault. On October 7, 2015, the circuit court conducted a jury trial, at which Assistant State's Attorney Brueckner represented the State. At the close of the State's case, Ms. Rovin's counsel made a motion for judgment of acquittal as to both counts, which the circuit court granted, finding that her actions constituted neither juror intimidation nor assault.

In the complaint, Ms. Rovin contended that her actions did not constitute a crime as a matter of law and that therefore no probable cause existed for the prosecution. Ms. Rovin alleged that as a result of the defendants' actions she suffered severe emotional distress and mental anguish as well as substantial monetary damages.

**Motions, Exhibits, and Responses**

On August 11, 2017, the State and prosecutors filed a motion to dismiss or for summary judgment. In the motion, the State contended that Maciarello and Assistant State's Attorney Brueckner were entitled to prosecutorial immunity, and that, accordingly, the State was not civilly liable for their conduct. The State also argued that Maciarello and Assistant State's Attorney Brueckner were entitled to State personnel immunity under the MTCA.

The State attached six exhibits to the motion. Exhibit 1 was a transcript of the hearing that the District Court conducted on Mr. Rovin's petition for a peace order on June 17, 2015.[4] Exhibit 2 was the application for a statement of charges and an arrest warrant that Deputy Cook signed on June 17, 2015. In the application, Deputy Cook averred that on June 16, 2015, he met with Mr. Rovin at his workplace, and Mr. Rovin told him, among other things, that the day after her daughter's conviction, Ms. Rovin visited his workplace and became verbally assaultive. Ms. Rovin was incensed by the notion that Mr. Rovin had sent a "fellow Rovin" to jail. Ms. Rovin threatened to have a man named Bill Rovin "take care of" Mr. Rovin. Ms. Rovin said that Bill Rovin worked in Nicaragua and knew people who would "take care of" Mr. Rovin. Mr. Rovin took Ms. Rovin's statement as an indirect

---

[4]The transcript reflected that at the peace order hearing, Mr. Rovin represented himself and the District Court asked Mr. Rovin questions to determine whether the circumstances satisfied any of the grounds for issuing a peace order. Mr. Rovin's responses caused the District Court to conclude that the issuance of a peace order was not warranted. Although the District Court denied the petition for a peace order, the District Court pointed out that, if Ms. Rovin's conduct was as Mr. Rovin had described, her actions could constitute a crime.

- 11 -

death threat. At the time, Mr. Rovin was still a member of the circuit court's jury pool for the month of June 2015. As a result of the incident, Mr. Rovin was discharged from further jury duties.

In the application, Deputy Cook also stated that he e-mailed Assistant State's Attorney Brueckner, who had represented the State at the trial in Ms. Rovin's daughter's criminal case, to let him know about Ms. Rovin's conduct. On June 17, 2015, Deputy Cook spoke with Carsten Wendlandt, an investigator of the Office of the State's Attorney, who advised that, after he conferred with Maciarello and Assistant State's Attorney Brueckner, it was believed that the circumstances constituted "a case of witness/jury intimidation and should be charged accordingly."

Exhibit 3 included a press release dated June 18, 2015.[5] Exhibit 4 was a printout of an article by a person named Vanessa Junkin with the website address www.delmarvanow.com and the date June 19, 2015 at the bottom.[6] Exhibit 5 was a criminal information that Maciarello signed, through which the State charged Ms. Rovin with juror intimidation and second-degree assault.

---

[5]We do not address the content of the press release because, on brief, Ms. Rovin states that her claims for defamation and false light invasion of privacy are not based on the press release.

[6]The headline of the article read: "Sheriff: Juror intimidation case is 'egregious[.]'" In the article, Junkin stated that Ms. Rovin "found out where the foreman of the jury that convicted her daughter of driving under the influence worked, and she went there and threatened him[.]" Junkin stated that Sheriff Lewis "said this week's case of juror intimidation is probably the 'most egregious' incident of that type he's seen during his time in office." Junkin stated that Sheriff Lewis said that "jurors shouldn't have to worry about actions like this, calling what [Ms.] Rovin is alleged to have done 'absolutely unacceptable.'" Junkin also quoted Sheriff Lewis as saying that "'[i]t's absolutely shocking[.]'"

Exhibit 6 was an excerpt of the transcript of the trial in Ms. Rovin's criminal case, which was conducted on October 7, 2015. The excerpt included the circuit court's ruling on Ms. Rovin's counsel's motion for judgment of acquittal. In ruling, the circuit court stated that juror intimidation consists of attempting to influence or impede a juror in the performance of the juror's official duties. The circuit court noted that, once the trial in Ms. Rovin's daughter's criminal case was over, Mr. Rovin could not have done anything to affect the outcome of the case. Thus, the circuit court determined that Ms. Rovin did not commit juror intimidation.[7] The circuit court also determined that Ms. Rovin did not commit second-degree assault as she merely threatened to do something at some point in the future.

In this case, on August 25, 2017, Ms. Rovin filed an opposition to the State's motion to dismiss or for summary judgment.[8] In the opposition, Ms. Rovin contended that

---

[7]Within a year of Ms. Rovin's acquittal, the General Assembly amended a different statute than the one that Ms. Rovin was charged with violating, entitled "Retaliation for Testimony[,]" Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2015 Supp.) ("CR (2015)") § 9-303(a), to apply to retaliation against a juror. See 2016 Md. Laws 6564-65 (Vol. VIII, Ch. 532, S.B. 156); 2016 Md. Laws 6566-67 (Vol. VIII, Ch. 533, H.B. 93). On brief, the parties agree that the amendment to CR (2015) § 9-303(a) to prohibit juror retaliation was in response to Ms. Rovin's acquittal. The General Assembly amended CR (2015) § 9-303(a), in pertinent part, with new language as follows: "A person may not intentionally harm another, threaten to harm another, or damage or destroy property with the intent of retaliating against: . . . (2) a juror for any reason relating to the performance of the juror's official duties in a pending or completed case[.]" 2016 Md. Laws 6564-67 (underlining and some capitalization omitted).

[8]Ms. Rovin also filed a motion for recusal and special assignment. In the motion, Ms. Rovin noted that Maciarello had become a judge of the Circuit Court for Wicomico County. Ms. Rovin requested that the judges of the Circuit Court for Wicomico County be recused, and that a judge of another circuit court be specially assigned to the case. On August 29, 2017, the circuit court issued an order granting the motion. The Honorable

- 13 -

prosecutorial immunity and State personnel immunity apply only where a plaintiff sues a defendant in a personal capacity, as opposed to in an official capacity. Ms. Rovin attached a signed affidavit to the opposition in which she acknowledged that, on June 16, 2015, she went to Mr. Rovin's workplace to talk to him about her daughter's conviction. Ms. Rovin also acknowledged that, at the time, she was upset about the conviction. Ms. Rovin, however, denied threatening to harm Mr. Rovin or telling him that someone else would harm him.

On August 28, 2017, the State filed a reply to the opposition. On September 6, 2017, Sheriff Lewis and Deputy Cook filed a separate motion to dismiss or for summary judgment and a memorandum in support, contending that they were entitled to State personnel immunity. On September 18, 2017, Ms. Rovin filed an opposition to, as well as a separate motion to strike, the officers' motion. In the opposition, Ms. Rovin acknowledged that, although she reserved the right to do so if she received substantiating evidence during discovery, she had not alleged that any of the individuals involved in the case acted with malice or gross negligence for purposes of State personnel immunity. In the motion to strike, Ms. Rovin contended that the officers lacked standing or capacity to file a motion to dismiss or for summary judgment because she sued them in their official capacities. Thereafter, the parties filed various other oppositions and replies.

On November 22, 2017, Ms. Rovin filed a notice of discovery, stating that her first request for production of documents had been mailed to the State's counsel and the

---

Paul Martin Bowman of the Circuit Court for Kent County was specially assigned to the case.

officers' counsel. On November 28, 2017, the State filed a motion for a protective order, requesting that discovery not be had until after the circuit court ruled on the State's motion to dismiss or for summary judgment. Ms. Rovin filed an opposition to the motion for a protective order, and the State filed a reply to the opposition.

**The Circuit Court's Rulings**

On January 29, 2018, the circuit court conducted a hearing on the pending motions. At the motions hearing, ruling from the bench, the circuit court granted the motion for a protective order, denied the motion to strike, and held both motions to dismiss or for summary judgment *sub curia.* In an order issued the same day, the circuit court indicated that it granted the motion for a protective order pending its ruling on the State's motion to dismiss or for summary judgment.

On February 10, 2018, the circuit court issued orders denying the motion to strike, as well as an opinion and order treating the State's motion to dismiss or for summary judgment as a motion for summary judgment and granting the same. Although the circuit court did not expressly rule on the officers' motion to dismiss or for summary judgment, the circuit court addressed issues related to the officers in its opinion. In the opinion, the circuit court concluded that there was no genuine dispute of material fact as to what occurred between Ms. and Mr. Rovin. The circuit court observed that, at the motions hearing, Ms. Rovin's counsel neither alluded to any dispute of material fact nor disputed Mr. Rovin's testimony at the peace order hearing regarding what Ms. Rovin said to him. The circuit court stated that, instead, at the motions hearing, Ms. Rovin's counsel simply offered legal argument that she did not commit juror intimidation. The circuit court

determined that, accordingly, it could dispose of this case as a matter of law. The circuit court stated that denying summary judgment so that Ms. Rovin could participate in discovery would amount to sanctioning "a fishing expedition[.]"

The circuit court concluded that the prosecutors were entitled to prosecutorial immunity for actions within the scope of their duties in the judicial process. The circuit court discussed whether the officers were entitled to immunity under the MTCA, but indicated that the officers were entitled to immunity under CJ § 5-507, which provides immunity for certain municipal officials, and indicated that immunity extended to the State if the individuals did not commit "any tortious conduct[.]"[9] The circuit court stated that "it is clear that both the State's Attorney's Office and the Sheriff's Office enjoy immunity when conducting their official duties." In discussing the malicious prosecution claim in particular, the circuit court indicated that there had been probable cause to prosecute Ms. Rovin for juror intimidation and that it did not find that the prosecutors had acted with "malicious intent," as Ms. Rovin had alleged.

---

[9]On brief, the parties appear to agree that the circuit court erred in reasoning that the officers were entitled to municipal official immunity. CJ § 5-507(a)(1) provides that "[a]n official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action." The Sheriff's Office, however, is not a municipal corporation. Indeed, it is not a legal entity. In Boyer v. State, 323 Md. 558, 572 n.9, 594 A.2d 121, 128 n.9 (1991), this Court held that the "the Charles County 'Sheriff's Department'" is not a legal entity that can be properly sued. This Court cited Md. Const., Art. 4, § 44, which requires each county, and Baltimore City, to have a sheriff. See id. at 572 n.9, 594 A.2d at 128 n.9. This Court explained, however, that no constitutional provision, statute, or ordinance creates a governmental agency called "the 'Sheriff's Department.'" Id. at 572 n.9, 594 A.2d at 128 n.9. It is clear that the officers are not entitled to municipal official immunity and we need not address the application of municipal official immunity under CJ § 5-507(a)(1).

- 16 -

The circuit court determined that its findings regarding immunity applied to all of Ms. Rovin's claims. The circuit court concluded that, even if its findings regarding immunity did not apply to Ms. Rovin's claim for defamation, the claim was not viable. Addressing the defamation claim, the circuit court determined that Sheriff Lewis's statements were neither defamatory nor false, and that the statements were not made with the required "common law malice."[10]

**Opinion of the Court of Special Appeals**

On April 3, 2018, Ms. Rovin filed a notice of appeal. On June 17, 2020, in an unreported opinion, the Court of Special Appeals vacated the circuit court's grant of the motion for a protective order and the grant of summary judgment, and remanded the case to the circuit court for further proceedings, including discovery. See Rovin, 2020 WL 3265119, at *9. The Court of Special Appeals determined that the circuit court abused its discretion in precluding Ms. Rovin from in engaging in discovery before the circuit court granted summary judgment. See id. at *1. The Court of Special Appeals held that the circuit court erred in granting summary judgment because there was a genuine dispute of material fact as to whether the reason why the prosecutors and officers pursued criminal charges against Ms. Rovin was that the circumstances justified doing so or that they had an ulterior or otherwise inappropriate motive for doing so. See id. The Court of Special

---

[10]After the circuit court issued its opinion, on February 20, 2018, Ms. Rovin filed a motion to alter or amend the judgment. On February 22, 2018, the State filed an opposition to the motion to alter or amend the judgment. On March 1, 2018, the officers filed an opposition to the motion to alter or amend the judgment. On March 7, 2018, the circuit court issued an order denying the motion to alter or amend the judgment.

- 17 -

Appeals indicated that the question of whether the criminal charges against Ms. Rovin were justified depended on a resolution of the dispute regarding what happened between Ms. Rovin and Mr. Rovin.  See id.

**Petition for a Writ of *Certiorari***

On August 4, 2020, Petitioners filed a petition for a writ of *certiorari*, raising the following two issues:

> 1.      Do common law absolute judicial and prosecutorial immunity and statutory immunity under the Maryland Tort Claims Act bar tort claims against prosecutors and law enforcement officers arising from an arrest based on the State's Attorney's and District Court Commissioner's legal determination of probable cause?
>
> 2.      Can law enforcement officers be civilly liable in tort when they sought an arrest warrant on the advice of the State's Attorney and made an arrest with a warrant based on a judicial officer's determination that the arrestee's alleged conduct amounted to a crime, when that determination was later held to be legally erroneous?

On October 6, 2020, this Court granted the petition.  See Rovin, 471 Md. 103, 240 A.3d 853.

**STANDARD OF REVIEW**

"An appellate court reviews without deference a trial court's grant of a motion for summary judgment, reviews the record in the light most favorable to the nonmoving party, and construes any reasonable inferences that may be drawn from the facts against the moving party."  Baltimore City Police Dep't v. Potts, 468 Md. 265, 282, 227 A.3d 186, 196 (2020) (cleaned up).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and [] the [moving] party is entitled to judgment as a matter of law."  Md. R. 2-501(a).

- 18 -

# DISCUSSION

## I.

### The Parties' Contentions

Petitioners contend that Ms. Rovin's claims are barred by common law and statutory immunities. Petitioners argue that the prosecutors are entitled to absolute common law prosecutorial immunity for their alleged role in all of Ms. Rovin's claims, and that prosecutorial immunity extends to the State as such immunity is not limited to claims against individuals in their personal capacity. Petitioners also assert that absolute immunity requires dismissal of the claims against the officers because the officers relied on probable cause determinations made by the prosecutors and the District Court Commissioner and these determinations were the "proximate cause" of Ms. Rovin's arrest. Specifically, Petitioners contend that, under Keller-Bee, 448 Md. 300, 138 A.3d 1253, the officers are entitled to absolute immunity from civil liability because the proximate cause of Ms. Rovin's allegedly false arrest was not the officers' actions, but instead the determinations made by Maciarello, Assistant State's Attorney Brueckner, and the District Court Commissioner that there was probable cause. Petitioners also maintain that the prosecutors and officers have State personnel immunity under the MTCA, as they were acting within the scope of their duties with respect to the arrest and prosecution of Ms. Rovin and neither malice nor gross negligence has been alleged.

Among many other things, Ms. Rovin responds that judicial immunity does not bar any of her claims and that neither the circuit court nor the Court of Special Appeals determined that judicial immunity applies. Ms. Rovin contends that the holding in Keller-

Bee, 448 Md. 300, 138 A.3d 1253, is distinguishable from the circumstances of this case because Keller-Bee involved claims against a judicial employee based on the employee's role in the judicial process. Ms. Rovin maintains that the Court of Special Appeals correctly determined that she should have been permitted to conduct discovery prior to a ruling on the State's motion for summary judgment.

Ms. Rovin acknowledges that Petitioners are likely correct that the prosecutors and officers are entitled to immunity under the MTCA, but asserts that Petitioners' position that the MTCA applies is a "judicial admission" that the State is accepting liability on behalf of the prosecutors and officers. Ms. Rovin argues that, because the circuit court did not find that the MTCA applies and "mix[ed] up aspects of the MTCA" with the form of immunity set forth in CJ § 5-507, summary judgment may not be upheld based on the MTCA, *i.e.*, a ground that she contends was not relied upon by the circuit court. Ms. Rovin also alleges that the applicability of the MTCA is a question for the trier of fact.

Ms. Rovin contends that the record is insufficient to demonstrate that prosecutorial immunity bars her claims. According to Ms. Rovin, Petitioners bear the burden of demonstrating which actions of a prosecutor are subject to prosecutorial immunity, and, here, the record is "sparse" as to the prosecutors' involvement in the events leading up to her arrest and imprisonment. Ms. Rovin maintains that prosecutorial immunity does not apply to a prosecutor giving advice to a law enforcement officer during a criminal investigation. Ms. Rovin also contends that prosecutorial immunity does not apply to a law enforcement officer obtaining an arrest warrant.

## Law

### *Judicial Immunity*

Judicial immunity is a common law doctrine and a form of absolute immunity. See D'Aoust v. Diamond, 424 Md. 549, 585, 596, 36 A.3d 941, 962, 968 (2012). The purpose of judicial immunity is to promote the independence of the courts by ensuring that, when exercising their authority, judicial officers are free to act upon their convictions without fear of any lawsuits that "disgruntled litigants" may initiate. Id. at 597, 36 A.3d at 969 (cleaned up). The applicability of judicial immunity does not depend on whether a judicial officer acted with malice. See id. at 585, 36 A.3d at 961-62. In discussing judicial immunity, we have observed that the immunity afforded judges "may be overcome in only two sets of circumstances—when the conduct is non-judicial, *i.e.*, actions not taken in the judge's judicial capacity, and when the conduct though judicial in nature, is taken in the complete absence of all jurisdiction." Gill, 352 Md. at 761, 724 A.2d at 92 (cleaned up). More recently, we stated that to be entitled to judicial immunity from civil liability for an act, a party must be a judicial officer, the act must have been a judicial act, and the party must not have known that the party clearly lacked jurisdiction over the matter at issue. See D'Aoust, 424 Md. at 598-99, 36 A.3d at 969-70.

In Keller-Bee, 448 Md. at 302, 138 A.3d at 1254, this Court held that judicial immunity bars a lawsuit against the State based on an allegedly negligent act of an employee of a clerk of court's office where the proximate cause of the plaintiff's alleged injuries was a judge's issuance of a body attachment. In Keller-Bee, id. at 302, 138 A.3d at 1254, the judge issued a body attachment against the plaintiff for failing to appear at a

hearing, when, in fact, the plaintiff had appeared at the hearing. The judge mistakenly believed otherwise because the other party in the case had moved to find the plaintiff in contempt for failing to appear at the hearing and had requested a body attachment. See id. at 302, 138 A.3d at 1254. An employee of the clerk's office who generated the body attachment papers and presented them to the judge allegedly did not verify whether the plaintiff had failed to appear at the hearing. See id. at 302-03, 138 A.3d at 1254-55.

The plaintiff sued the State for negligence and a violation of Article 24 of the Maryland Declaration of Rights, attempting to have the State be civilly liable for the employee's actions in preparing the body attachment papers and not confirming whether the plaintiff had failed to appear at the hearing. See id. at 303, 138 A.3d at 1254-55. The plaintiff did not attempt to hold the State civilly liable for the judge's act of issuing the body attachment. See id. at 303, 138 A.3d at 1254-55. We pointed out that the plaintiff apparently realized that, due to judicial immunity, it would be futile to sue the judge. See id. at 309, 138 A.3d at 1258. We explained that the plaintiff tried to shift the blame for the body attachment from the judge to the employee. See id. at 309, 138 A.3d at 1258. Specifically, the plaintiff contended that the employee had a duty to independently assess the merits of the request for a body attachment to prevent the judge from issuing an erroneous body attachment. See id. at 309, 138 A.3d at 1258. We determined that, in contending as much, the plaintiff conceded that it was the judge, not the employee, who had erred. See id. at 309, 138 A.3d at 1258.

We concluded that the plaintiff failed to state a claim upon which relief could be granted because the proximate cause of the plaintiff's alleged injuries was not the

- 22 -

employee's action.  See id. at 310, 138 A.3d at 1259.  We determined that, instead, the proximate cause of the plaintiff's alleged injuries was the judge's issuance of the body attachment, an act to which judicial immunity applied.  See id. at 309-10, 138 A.3d at 1258-59.  We stated that it was not necessary to decide whether clerical employees are entitled to judicial immunity to the same extent as judges or whether in preparing the paperwork the employee acted under the supervision of the judge because the employee's conduct did not cause the plaintiff's injuries, *i.e.*, the judge's act in issuing the body attachment was the action that caused the injuries and that action was covered by judicial immunity.  See id. at 307, 138 A.3d at 1257.

### *Prosecutorial Immunity*

Prosecutorial immunity is another type of absolute immunity and is also a common law doctrine.  See Gill, 352 Md. at 770, 724 A.2d at 96.  Prosecutorial immunity arose out of, and is related to, judicial immunity.  See id. at 770, 724 A.2d at 96.  Similar to the purpose of judicial immunity, the purpose of prosecutorial immunity is to protect prosecutors' independent decision-making by ensuring that fear of unfounded lawsuits does not affect their actions.  See id. at 767, 724 A.2d at 94.  As with judicial immunity, the applicability of prosecutorial immunity does not depend on whether a prosecutor acted with malice.  See id. at 774, 724 A.2d at 98.  In Gill, id. at 770, 724 A.2d at 96, we stated:

> Although, as noted, we have not dealt specifically with prosecutorial immunity, we have, in defining and applying judicial immunity, from which prosecutorial immunity arose and with which it maintains some affinity, adopted the functional approach taken by the Supreme Court, holding that absolute immunity protects judges so long as their acts are judicial in nature and within the very general scope of their jurisdiction.

- 23 -

(Cleaned up). As a result, we concluded, "as a matter of Maryland common law, that prosecutors enjoy absolute immunity with respect to claims arising from their role in the judicial process[.]" Id. at 770, 724 A.2d at 96. Such claims may involve "evaluating whether to commence a prosecution by criminal information, presenting evidence to a grand jury in the quest for an indictment, filing charges, [] preparing and presenting the State's case in court[,]" id. at 770, 724 A.2d at 96 (footnote omitted), and terminating a prosecution with or without prejudice, see id. at 774, 724 A.2d at 98.

In Gill, id. at 780, 773, 724 A.2d at 101, 97, this Court held that a clerical employee within the Office of the State's Attorney for Harford County had prosecutorial immunity for erroneously informing a plaintiff after the dismissal of a paternity action that the plaintiff would not be able to ever bring such an action again, and the employee refused, upon request, to assist the plaintiff with efforts to reopen the proceeding. We concluded that the employee, who acted under the State's Attorney's direction, and whose conduct was directly involved with the prosecution of the paternity proceeding, was entitled to prosecutorial immunity. See id. at 773, 724 A.2d at 97-98. We explained that there was no valid reason to distinguish the employee's role in the prosecution from that of law clerks or court clerks who act under the control and supervision of judges, see id. at 773, 724 A.2d at 97-98, and perform tasks that are integral to the judicial process, and, as a result, are entitled to judicial immunity, see id. at 771, 724 A.2d at 96.

### State Personnel Immunity

Sovereign immunity is yet another form of absolute immunity and is also a common law doctrine. See Washington Suburban Sanitary Comm'n v. Bowen, 410 Md. 287, 301,

- 24 -

299, 978 A.2d 678, 687, 685 (2009). Under the doctrine of sovereign immunity, the State cannot incur civil liability without its consent. See Beka Indus., Inc. v. Worcester Cty. Bd. of Educ., 419 Md. 194, 206, 18 A.3d 890, 897 (2011). Such consent is known as a waiver of sovereign immunity. See Bd. of Educ. of Baltimore Cty. v. Zimmer-Rubert, 409 Md. 200, 212, 973 A.2d 233, 240 (2009).

The General Assembly has partially waived the State's sovereign immunity by enacting SG § 12-104(a), which is part of the MTCA. See Cooper v. Rodriguez, 443 Md. 680, 706-07, 118 A.3d 829, 844-45 (2015). Specifically, SG § 12-104(a) provides that sovereign immunity is waived as to a tort action, up to $400,000 per claimant per incident or occurrence. See SG § 12-104(a)(1) and (a)(2). SG § 12-104(b), however, provides that sovereign immunity is not waived in certain respects, as provided in CJ § 5-522. One subsection, CJ § 5-522(a)(4), provides that sovereign immunity is not waived for "[a]ny tortious act or omission of State personnel that: (i) Is not within the scope of the public duties of the State personnel; or (ii) Is made with malice or gross negligence[.]" (Paragraph breaks omitted). SG § 12-105, which is also part of the MTCA, provides that "State personnel shall have the immunity from liability described under" CJ § 5-522(b). CJ § 5-522(b) provides, in pertinent part, that "State personnel . . . are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence[.]"

Read together, these provisions contemplate two possible outcomes where an individual who is State personnel has allegedly engaged in a tortious act or omission for

which there is an issue of.  See Cooper, 443 Md. at 707-08, 118 A.3d at 845.  If the individual acts within the scope of the individual's public duties and without malice or gross negligence, the individual is entitled to State personnel immunity, and the State is not entitled to sovereign immunity.  See id. at 708, 118 A.3d at 845.  By contrast, if the individual does not act within the scope of the individual's public duties or if the individual acts with malice or gross negligence, then the individual is not entitled to State personnel immunity, and the State is entitled to sovereign immunity because sovereign immunity is not waived under that circumstance.  See id. at 708, 118 A.3d at 845.  In the first outcome, the individual is not civilly liable under the MTCA, and the State is.  See id. at 708, 118 A.3d at 845.  In the second outcome, the individual is civilly liable, and the State is not. See id. at 708, 118 A.3d at 845.

That said, where the individual is entitled to a form of absolute immunity, *e.g.*, prosecutorial immunity or judicial immunity, neither the individual nor the State is civilly liable, even if the individual is also entitled to State personnel immunity under the MTCA. In Parker v. State, 337 Md. 271, 286, 653 A.2d 436, 443 (1995), this Court stated that "[j]udicial acts performed by judges are among those governmental functions that cannot give rise to civil liability in tort.  Accordingly, a suit that is barred by judicial immunity cannot form the basis of a recovery against the State under the Tort Claims Act."  In Parker, id. at 274-75, 653 A.2d at 437-38, a motorist who was ultimately acquitted of the charge of speeding in the circuit court sued a circuit court judge who had mistakenly issued an arrest warrant that led to the motorist's arrest. The motorist contended that the circuit court judge was not entitled to judicial immunity because the judge lacked jurisdiction to issue

the arrest warrant.  See id. at 276, 653 A.2d at 438.  The parties had agreed that, if the judge had judicial immunity, then the State would not be liable under the MTCA.  See id. at 277, 653 A.2d at 438-39.  This Court held that the judge was entitled to judicial immunity and explained that, where an action is precluded by judicial immunity, there can be no recovery against the State under the MTCA.  See id. at 286-87, 653 A.2d at 443-44.  This Court explained:

> The differences between absolute judicial immunity and the qualified immunity of most other public officials are justified by the same concerns that precipitated the development of judicial immunity.  Like other public officials, judges might be deterred from conscientious decision making if they were susceptible to civil liability for their official actions.  Unlike other public officials, judges are required, on a daily basis, to make numerous decisions in disputes between adverse parties.  With respect to each judicial decision, there is a winner and a loser. . . . With such important issues at stake in an adversarial context, absolute immunity is needed to forestall endless collateral attacks on judgments through civil actions against the judges themselves.

Id. at 286-87, 653 A.2d at 443 (citation omitted).

**Analysis**

Here, upon careful consideration of the record and our case law, we hold that the circuit court was correct in concluding that there was no genuine dispute of material fact as to the prosecutors' entitlement to absolute common law immunity in the form of prosecutorial immunity, and that summary judgment was warranted as a matter of law as to all of Ms. Rovin's claims involving Maciarello and Assistant State's Attorney Brueckner. Given that Maciarello and Assistant State's Attorney Brueckner are entitled to prosecutorial immunity, an absolute immunity, the State cannot be held civilly liable for their actions in this case.  As such, the circuit court was correct in granting summary

judgment in favor of the prosecutors and the State as to any action in the complaint alleged to have been taken by Maciarello and Assistant State's Attorney Brueckner.

The officers, Sherriff Lewis and Deputy Cook, however, are not entitled to absolute prosecutorial immunity. Similarly, absolute immunity in the form of judicial immunity does not apply to the actions of the officers. Moreover, we decline to extend judicial immunity under the holding in Keller-Bee to the officers. State personnel immunity under the MTCA, though, bars Ms. Rovin's claims against the officers, as well as the prosecutors, in their individual capacities. As such, the State does not have immunity under the MTCA, but whether the State is liable for any actions taken by Sheriff Lewis and Deputy Cook, who are not entitled to absolute immunity, is a matter to be resolved by further proceedings in the circuit court. We discuss our conclusions in order.

To begin, as the circuit court concluded, there is no genuine dispute of material fact that would bar the prosecutors and the State from entitlement to absolute prosecutorial immunity for the actions of the prosecutors alleged in Ms. Rovin's complaint. In its current state, the record is sufficient for us to determine whether the prosecutors and the State are entitled to judgment as a matter of law on the basis of prosecutorial immunity. Contrary to the Court of Special Appeals's reasoning, in assessing the applicability of prosecutorial immunity, it is not necessary to determine whether the circumstances of the encounter between Ms. Rovin and Mr. Rovin at his workplace "justified" the prosecutors pursuing charges or whether they had "an ulterior or otherwise improper motive" for doing so. Rovin, 2020 WL 3265119, at *9. It is a well-established tenet of Maryland common law that prosecutors enjoy absolute prosecutorial immunity for claims arising from their role

- 28 -

in the judicial process and that the immunity extends to acts such as evaluating whether to begin a prosecution by criminal information, presenting evidence to a grand jury to obtain an indictment, filing charges, and preparing and presenting the State's case in court. See Gill, 352 Md. at 770, 724 A.2d at 96. It is equally well established that allegations of malice do not defeat prosecutorial immunity. See id. at 774, 724 A.2d at 98. Prosecutorial immunity is a close relative of judicial immunity and such absolute immunity protects both judges and prosecutors so long as their acts arise from their role in the judicial process regardless of their reasons for acting. See id. at 770, 724 A.2d at 96.

Maciarello and Assistant State's Attorney Brueckner are entitled to prosecutorial immunity for the conduct alleged by Ms. Rovin because the actions at issue plainly arose from their role as prosecutors in the judicial process. Those actions include Maciarello and Assistant State's Attorney Brueckner giving advice to Deputy Cook about the institution of charges, providing information to the prosecutor who represented the State at the bail review hearing in Ms. Rovin's criminal case, filing the criminal information against her in the circuit court, and representing the State at the trial in her criminal case. This conduct is of the type that has been specifically defined in case law as being that for which prosecutors enjoy prosecutorial immunity. Given that a prosecutor's reason for pursuing criminal charges is not determinative of the issue of prosecutorial immunity, uncovering the rationale or basis for Maciarello's and Assistant State's Attorney Brueckner's decision to pursue charges against Ms. Rovin is not necessary to evaluating the application of prosecutorial immunity. Similarly, determining whether either Ms. Rovin's or Mr. Rovin's account of what occurred during their interaction at his workplace is accurate is not

- 29 -

determinative of the application of prosecutorial immunity. If the application of prosecutorial immunity depended upon the outcome of a case, *i.e.*, a defendant actually being found guilty, prosecutorial immunity could not exist. Contrary to the Court of Special Appeals's reasoning, see Rovin, 2020 WL 3265119, at *1, the circuit court was not required to allow discovery before granting summary judgment as to Maciarello and Assistant State's Attorney Brueckner on the basis of prosecutorial immunity.

As a general principle, where there is no genuine dispute of material fact and a party is entitled to judgment as a matter of law, a trial court is not required to refrain from granting summary judgment to allow development of a more complete factual record. In A.J. Decoster Co. v. Westinghouse Elec. Corp., 333 Md. 245, 262-63, 634 A.2d 1330, 1338 (1994), this Court held that, while a trial "court has the discretion to deny a motion for summary judgment so that a more complete factual record can be developed, it is not reversible error if the court chooses not to do so." (Citations omitted). This Court was unpersuaded by the nonmoving party's contention that, if it had been allowed to complete discovery, it might have uncovered facts that would preclude summary judgment. See id. at 262-63, 634 A.2d at 1338. This Court concluded that, because the facts were undisputed, the trial court did not err in granting summary judgment without allowing the nonmoving party to complete discovery. See id. at 262-63, 634 A.2d at 1338. Similarly, here, because there was no genuine dispute of material fact as to the prosecutors' entitlement to prosecutorial immunity, the circuit court was not required to permit discovery before granting summary judgment on that basis.

Because Ms. Rovin has raised an issue as to whether a prosecutor giving advice to

a law enforcement officer is an act that falls under prosecutorial immunity, we will address the issue. We are satisfied that prosecutorial immunity applies to Maciarello's and Assistant State's Attorney Brueckner's advice to Deputy Cook to charge Ms. Rovin with juror intimidation. In advising Deputy Cook, Maciarello and Assistant State's Attorney Brueckner evaluated whether Ms. Rovin should have been charged with an offense in the District Court, and, as such, engaged in an act that is as much a part of the judicial process as "evaluating whether to commence a prosecution by criminal information[.]" Gill, 352 Md. at 770, 724 A.2d at 96.

We are not persuaded by Ms. Rovin's contention that prosecutorial immunity does not apply to advice that a prosecutor gives a law enforcement officer. In support of the contention, Ms. Rovin relies on Burns v. Reed, 500 U.S. 478, 495 (1991), and two subsequent opinions that cited Burns—Simms v. Constantine, 113 Md. App. 291, 306, 688 A.2d 1, 8 (1997) and Van de Kamp v. Goldstein, 555 U.S. 335, 343 (2009). These cases, however, are distinguishable from the circumstances of this one. In Burns, 500 U.S. at 481-83, 496, a 1991 case that arose under 42 U.S.C. § 1983, the Supreme Court considered whether a prosecutor who advised a law enforcement officer that a person who was suspected of having multiple personalities could be questioned by the officer under hypnosis, and while under hypnosis the person made incriminating statements, the Supreme Court concluded that the prosecutor's advice was not covered by absolute prosecutorial immunity. The Supreme Court noted that, unlike the absolute common law immunity from liability extended to prosecutors for malicious prosecution, the Supreme Court had not been inclined to extend absolute immunity under 42 U.S.C. § 1983. See id.

at 493. The Supreme Court indicated that it had previously observed that 42 U.S.C. § 1983 "on its face does not provide for *any* immunities[.]" Id. at 494 (emphasis in original). To be sure, in response to the argument that a prosecutor giving legal advice is related to the prosecutor's role in screening cases for prosecution, the Supreme Court observed that almost any action by a prosecutor, including direct participation in investigative activity, could be said to be related to the ultimate decision of whether to prosecute. See id. at 495. The Supreme Court indicated, however, that the application of absolute immunity depended on whether the prosecutors' actions are closely associated with the judicial process. See id.

In Simms, 113 Md. App. at 299, 321, 688 A.2d at 5, 16, where prosecutors were alleged to have manipulated or falsified evidence against police officers so as to cause the initiation of criminal investigations against the officers, the Court of Special Appeals held that the prosecutors' alleged conduct was not covered by prosecutorial immunity. In Simms, id. at 297-98, 688 A.2d at 4, law enforcement officers attempted to execute a search warrant at the home of a relative of the wife of the mayor of Baltimore City, but allegedly, the mayor learned that the search was happening, intervened, and caused someone in the chain of command of the Baltimore Police Department to prohibit the officers from completing the search. It was alleged that, because of a perceived affront, the mayor enlisted the assistance of prosecutors and the police commissioner in instituting criminal charges against the officers who conducted the search, and, thereafter, it was alleged that the prosecutors manufactured evidence against the officers. See id. at 299, 688 A.2d at 4-5. The prosecutors moved to dismiss the case on the ground of absolute prosecutorial

immunity.  See id. at 319, 688 A.2d at 14.  The Court of Special Appeals characterized the prosecutors' conduct as investigative and was not persuaded that the alleged conduct involved duties in the prosecutors' role in the judicial process.  See id. at 319-21, 688 A.2d at 14-16.  The Court of Special Appeals stated that "[i]n no sense can any investigative activity undertaken by the [prosecutors] or any legal advice given by them to the police commissioner, to the Mayor, or to anyone else be deemed to be a part of the judicial function of the State's Attorney's Office."  Id. at 320, 688 A.2d at 15.  The Court of Special Appeals stated, under Burns, 500 U.S. at 495, that "[w]hen a prosecutor is involved in the investigative function, [the prosecutor] is entitled to no more by way of immunity than is the police officer who is involved in that same function[.]"  Simms, 113 Md. App. at 314, 688 A.2d at 12.  The Court of Special Appeals concluded that the trial court was correct in denying the prosecutors' motion to dismiss on the ground of prosecutorial immunity because, at that stage of litigation, it could not be determined whether the prosecutors' alleged actions fell into the category of investigative functions or in the category of the prosecutors' role in the judicial process.  See id. at 319-21, 688 A.2d at 14-16.

In Van de Kamp, 555 U.S. at 338-39, the Supreme Court held that prosecutorial immunity applied to claims that prosecutors failed to disclose impeachment material due to failures to properly train and supervise prosecutors and to establish an information system concerning potential impeachment material regarding informants.  The Supreme Court reiterated that prosecutorial immunity does not apply where a prosecutor is not acting as an officer of the court, and instead is engaged in other tasks, such as investigative or administrative ones.  See id. at 342.  The Supreme Court cited Burns, 500 U.S. at 492, 496,

for the proposition that it had previously held that absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, but had also held that absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation. See Van de Kamp, 555 U.S. at 343. Although the Supreme Court cited Burns for the distinction with respect to prosecutorial immunity where a prosecutor is engaged in an investigative function as opposed to a role in the judicial process, the circumstances of Van de Kamp did not involve any issue whatsoever as to a prosecutor giving legal advice.

Burns, 500 U.S. at 482, Simms, 113 Md. App. at 320, 688 A.2d at 15, and Van de Kamp, 555 U.S. at 339, are distinguishable because they did not involve a prosecutor giving legal advice regarding the initiation of criminal charges, but rather involved prosecutors who either gave, or may have given, legal advice as part of an investigative process or who did not give legal advice at all. In Burns, 500 U.S. at 482, the prosecutor clearly gave a law enforcement officer advice concerning the process for gathering a statement from a suspect, and not a matter related to the decision to begin prosecution. In Simms, 113 Md. App. at 320, 688 A.2d at 15, the prosecutors involved were not even alleged to have given advice to a law enforcement officer, but rather were said to have potentially advised the mayor and police commissioner. And, as mentioned above, in Van de Kamp, 555 U.S. at 339, the prosecutors did not give any advice at all. By contrast, here, the record makes clear that Maciarello and Assistant State's Attorney Brueckner gave advice to Deputy Cook to institute charges against Ms. Rovin as part of their role in the judicial process. Maciarello and Assistant State's Attorney Brueckner did not give advice

- 34 -

to Deputy Cook with respect to an investigation, *e.g.*, to gather additional evidence or to interrogate a suspect in a certain manner. We decline to follow the cases suggested by Ms. Rovin and will apply the common law of Maryland regarding prosecutorial immunity, as this Court determined it to be in Gill, 352 Md. at 770, 724 A.2d at 96. We conclude that Maciarello's and Assistant State's Attorney Brueckner's advice to Deputy Cook to institute charges constituted an instance of "evaluating whether to commence a prosecution[.]" Gill, 352 Md. at 770, 724 A.2d at 96. As such, consistent with Gill, id. at 770, 724 A.2d at 96, we hold that prosecutorial immunity applies where a prosecutor advises a law enforcement officer to file with a judicial officer an application for a statement of charges as this is an act related to the decision of whether to prosecute and an act closely associated with the prosecutor's role in the judicial process.

Because Maciarello and Assistant State's Attorney Brueckner are entitled to prosecutorial immunity, the State is not civilly liable for their actions in this case. Our conclusion is informed by this Court's holding in Parker, 337 Md. at 287, 653 A.2d at 444, that, because a judge was entitled to judicial immunity, the State was not civilly liable for the judge's alleged torts. This Court explained that, where a judicial officer is entitled to judicial immunity, a plaintiff cannot recover from the State for the judicial officer's alleged torts, notwithstanding the MTCA. See id. at 286, 653 A.2d at 443. The same is the case where a prosecutor is entitled to prosecutorial immunity; the State cannot be held liable for the prosecutors' alleged torts.

Although Maciarello and Assistant State's Attorney Brueckner as prosecutors are entitled to prosecutorial immunity, our examination of relevant case law reveals that the

officers are not entitled to prosecutorial immunity. We disagree with Petitioners' contention that Sheriff Lewis and Deputy Cook are entitled to prosecutorial immunity because they relied on Maciarello's and Assistant State's Attorney Brueckner's determination that there was probable cause to believe that Ms. Rovin violated the juror intimidation statute. Although our holding in Gill, 352 Md. 754, 724 A.2d 88, indicates that a prosecutor, or a clerical employee who acts at a prosecutor's direction, can be entitled to prosecutorial immunity, we decline to extend the same rationale to law enforcement officers who consult with prosecutors. In Gill, id. at 770, 724 A.2d at 96, this Court described the scope of prosecutorial immunity by stating "that prosecutors enjoy absolute immunity with respect to claims arising from their role in the judicial process—evaluating whether to commence a prosecution by criminal information, presenting evidence to a grand jury in the quest for an indictment, filing charges, and preparing and presenting the State's case in court." (Footnote omitted). In holding as such, we identified prosecutors as the individuals in the judicial process for whom prosecutorial immunity is intended, and also listed examples of conduct to which prosecutorial immunity applies, *i.e.*, actions that only a prosecutor can take, such as presenting evidence to a grand jury when seeking an indictment.

This Court's holding in Gill does not support the notion that a law enforcement officer would be entitled to prosecutorial immunity. Although a law enforcement officer may act at a prosecutor's direction—as in this case, where Deputy Cook followed Maciarello's and Assistant State's Attorney Brueckner's advice to apply for a statement of charges against Ms. Rovin—the relationship between a prosecutor and a law enforcement

officer is not analogous to that of a judge and a law clerk or a clerk of the court, as was the relationship between the State's Attorney and the clerical employee who was entitled to prosecutorial immunity in Gill, id. at 773, 724 A.2d at 97-98. Plainly, a prosecutor has no supervisory authority over a police officer in the workplace, and a police officer who is seeking a statement of charges and an arrest warrant independently brings to a prosecutor information for the prosecutor's use in determining whether to bring charges. These circumstances demonstrate that prosecutorial immunity should not extend to law enforcement officers in the pursuit of law enforcement related activities, even where an officer consults with a prosecutor.

In addition to our holding in Gill, the Supreme Court's decision in Malley v. Briggs, 475 U.S. 335 (1986), supports the conclusion that a law enforcement officer is not entitled to prosecutorial immunity. In Malley, id. at 342, 337, the Supreme Court rejected a law enforcement officer's contention that he was entitled to prosecutorial immunity[11] from civil liability for applying for an arrest warrant in the alleged absence of probable cause. The Supreme Court pointed out that, under the federal common law, only qualified immunity could attach to an officer's application for an arrest warrant. See Malley, 475 U.S. at 342. The Supreme Court was unpersuaded by the officer's attempt to analogize his role to that of a prosecutor. See id. The Supreme Court determined that, although an officer's

---

[11]Although the Supreme Court did not use the term "prosecutorial immunity," it stated that the officer requested the same form of absolute immunity as that which prosecutors enjoy. See Malley, 475 U.S. at 342. The Supreme Court cited Imbler v. Pachtman, 424 U.S. 409 (1976). See Malley, 475 U.S. at 342. In Imbler, 424 U.S. at 422, the Supreme Court referred to that form of absolute immunity as "prosecutorial immunity[.]"

application for an arrest warrant is a vital part of the administration of criminal justice, it is further removed from the judicial phase of criminal proceedings than a prosecutor's request for an indictment. See id. at 342-43. The Supreme Court's holding in Malley demonstrates the principle that is suggested by this Court's holding in Gill—namely, that a law enforcement officer is not entitled to absolute prosecutorial immunity.

This Court has previously found persuasive the Supreme Court's holding in Malley as to a law enforcement officer not being entitled to prosecutorial immunity. In Smith v. Danielczyk, 400 Md. 98, 103, 928 A.2d 795, 798 (2007), this Court held that a law enforcement officer is not entitled to absolute immunity from civil liability for making allegedly false, defamatory statements in an application for a search warrant and disclosing the statements to the media. This Court called Malley "instructive and persuasive," and agreed with the Supreme Court's determination that an officer's conduct in applying for a search warrant would not be entitled to absolute immunity. Smith, 400 Md. at 124-25, 928 A.2d at 811. Consistent with the Supreme Court's holding in Malley and our holdings in Gill and Smith, we conclude that the officers in this case are not entitled to absolute prosecutorial immunity with respect to the actions alleged by Ms. Rovin in her complaint.

Having determined that absolute prosecutorial immunity applies to Maciarello, Assistant State's Attorney Brueckner, and the State for the actions of the prosecutors, but that such immunity does not apply to the officers, we examine whether judicial immunity applies to the officers. To be entitled to absolute judicial immunity from civil liability for an act, a party must be a judicial officer, the act must have been a judicial act, and the party must not have known of the alleged lack of jurisdiction over the matter at issue. See

D'Aoust, 424 Md. at 598-99, 36 A.3d at 969-70. This description of judicial immunity makes clear that law enforcement officers are not entitled to such immunity. Indeed, this Court has repeatedly indicated that, generally, law enforcement officers cannot be entitled to any form of absolute immunity (such as judicial immunity), and instead can, at most, be entitled to a form of qualified immunity (such as public official immunity). For example, in Gill, 352 Md. at 763, 724 A.2d at 93, we stated that, generally, an executive official who exercises an executive function is entitled either to qualified immunity, or to no immunity at all. In Smith, 400 Md. at 124 n.9, 928 A.2d at 810 n.9, we observed that, generally, law enforcement officers cannot be entitled to absolute immunity, and instead can be entitled only to public official immunity. In Williams v. Mayor & City Council of Baltimore, 359 Md. 101, 139, 753 A.2d 41, 61 (2000), we noted that, unlike courts in certain other jurisdictions, which have held that a law enforcement officer who acts within the scope of official duties may be entitled to absolute immunity, we have conditioned the immunity of a law enforcement officer on acting without malice. In other words, we have consistently held that a law enforcement officer may be entitled to public official immunity, one element of which is that the public official acts without malice. See id. at 138, 753 A.2d at 61. In sum, this Court's case law offers no support for the notion that a law enforcement officer can be entitled to judicial immunity, and instead affirmatively demonstrates the opposite—*i.e.*, that a law enforcement officer is not entitled to judicial immunity.

Our holding in Keller-Bee, 448 Md. 300, 138 A.2d 1253, does not support the principle that law enforcement officers are entitled to judicial immunity. In Keller-Bee, id. at 302, 138 A.3d at 1254, this Court held that judicial immunity barred claims against the

- 39 -

State for the alleged negligence of an employee of the Clerk of the Court where the proximate cause of the plaintiff's alleged injury was a judge's issuance of a body attachment. In Keller-Bee, id. at 309, 138 A.3d at 1258, a plaintiff tried to hold the State civilly liable for the failure of the employee to prevent a judge from erroneously issuing a body attachment. In holding that the plaintiff failed to state a claim upon which relief could be granted because the proximate cause of the plaintiff's alleged injury was the judge's issuance of the body attachment, an act to which judicial immunity applied, this Court expressly declined to address whether the employee was entitled to judicial immunity. See id. at 309-10, 138 A.3d at 1258-59, 1257. Instead, what mattered to this Court's analysis was the principle that judicial immunity applied to the proximate cause of the plaintiff's alleged injury—namely, the judge's issuance of the body attachment. See id. at 309-10, 138 A.3d at 1258-59. Given that this Court did not apply judicial immunity to the employee in Keller-Bee, this Court's holding in that case would in no way support extending judicial immunity to the law enforcement officers here. Just as we did not hold that the employee was entitled to judicial immunity in Keller-Bee, id. at 307, 138 A.3d at 1257, here, we do not hold that the officers are entitled to judicial immunity.

Nor are we persuaded by Petitioners' contention that, under Keller-Bee, absolute immunity bars Ms. Rovin's claims against the officers because the proximate cause of Ms. Rovin's arrest was the determination by the District Court Commissioner that there was probable cause for the arrest warrant—an act to which judicial immunity applied. Here, although a District Court Commissioner issued the arrest warrant, the circumstances are

- 40 -

vastly different than those in <u>Keller-Bee</u>.[12]  <u>Keller-Bee</u> involved claims against a judicial employee based on the employee's clerical role in the judicial process.  A clerical employee who drafts body attachment papers and presents them to a judge, as was the case in <u>Keller-Bee</u>, is not at all analogous to a law enforcement officer who applies for and executes an arrest warrant.  The role of a law enforcement officer in applying for and executing an arrest warrant is far more complex.  A law enforcement officer plays a much more significant role in seeking and executing an arrest warrant, especially given that the law enforcement officer is the source of the factual allegations on which a judicial officer relies in determining whether to issue the arrest warrant.  As Petitioners themselves acknowledge, when applying for an arrest warrant, a law enforcement officer is required to be honest in providing information to a judicial officer.  To hold that a judicial officer's issuance of an arrest warrant acts as a shield from civil liability for the law enforcement officer who requested and executed the arrest warrant would be to ignore the circumstance that the judicial officer's decision to issue the warrant is based on factual allegations that the law enforcement officer provides and that the law enforcement officer is ultimately responsible for the manner in which the warrant is executed.  Nothing in our holding in <u>Keller-Bee</u> alters the conclusion that Ms. Rovin's claims based on the officers' actions are not barred by absolute immunity, whether judicial or prosecutorial immunity.

_____

[12]Ms. Rovin's reliance on <u>Parker</u>, 337 Md. 271, 653 A.2d 436, a case cited in <u>Keller-Bee</u>, 448 Md. at 307-08, 138 A.3d at 1257-58, is not well placed.  In <u>Parker</u>, 337 Md. at 275, 653 A.2d at 437-38, the plaintiff sued the State, the judge, the clerk, the deputy clerk, and an assistant clerk, and in an amended complaint, also sued a sheriff and deputy sheriff.  But, in <u>Parker</u>, <u>id.</u> at 276 n.3, 653 A.2d at 438 n.3, this Court noted that the plaintiff "raised no issue on appeal involving the actions of the sheriff and a deputy sheriff[.]"

Moreover, to the extent that Petitioners ask us to extend absolute immunity to law enforcement officers based on Keller-Bee, Petitioners' request is at odds not only with Keller-Bee, but also with other decisions of this Court. Our case law makes clear that, generally, law enforcement officers are not entitled to absolute immunity—whether judicial immunity, prosecutorial immunity, or otherwise.[13] In previous cases, this Court has pointed out the distinctions between judicial immunity (to which a judge can be entitled) and public official immunity (to which a law enforcement officer can be entitled). See Ashton v. Brown, 339 Md. 70, 118, 660 A.2d 447, 471 (1995); Parker, 337 Md. at 285, 653 A.2d at 442-43. In short, this Court has never made any form of absolute immunity generally applicable to actions by law enforcement officers, and we decline to do so here.

Having addressed the applicability of absolute prosecutorial immunity and judicial immunity, we turn to the applicability of State personnel immunity under the MTCA. The record and the applicable provisions of the MTCA make clear that the officers, as well as the prosecutors, are entitled to State personnel immunity. The officers and prosecutors meet the definition of "State personnel" under the MTCA, and there is no allegation that any of them acted with malice or gross negligence or was acting outside the scope of their public duties.

---

[13]The Supreme Court has made similar statements regarding whether a law enforcement officer can be entitled to absolute immunity under the federal common law. For example, in Rehberg v. Paulk, 566 U.S. 356, 363-64 (2012), the Supreme Court observed that it had not found absolute immunity for actions of law enforcement officers. Similarly, in Pierson v. Ray, 386 U.S. 547, 555 (1967), the Supreme Court noted that the federal common law had never given law enforcement officers absolute immunity.

SG § 12-101(a) defines "State personnel" to include, in pertinent part: "(6) a sheriff or deputy sheriff of a county or Baltimore City; [and] (8) a State's Attorney of a county or Baltimore City, or an employee of an office of a State's Attorney[.]" Maciarello, Assistant State's Attorney Brueckner, Sheriff Lewis, and Deputy Cook were the State's Attorney for Wicomico County, an Assistant State's Attorney for Wicomico County, the Sheriff of Wicomico County, and a Deputy Sheriff of Wicomico County, respectively. Thus, plainly, the prosecutors and officers are "State personnel" under the MTCA.

The purpose of State personnel immunity is generally to insulate State personnel from civil liability for actions that are within the scope of employment and that are performed without malice or gross negligence. See Cooper, 443 Md. at 725, 118 A.3d at 855-56. Ms. Rovin's filings demonstrate that she has not taken the position that any of the individual Petitioners have acted with the malice or gross negligence required to defeat State personnel immunity. Indeed, the complaint is devoid of any allegation that an individual Petitioner acted with such malice or gross negligence. Although Ms. Rovin alleged that the defendants acted with malice in pursuing her prosecution without probable cause, she did so only in the context of making a claim for malicious prosecution. The definition of "malice" as an element of malicious prosecution, however, is not coterminous with the definition of "malice" that negates State personnel immunity. As an element of malicious prosecution, "malice" means that, in initiating a criminal case against a plaintiff, a defendant had an improper motive—*i.e.*, a purpose other than bringing the plaintiff to justice. See DiPino v. Davis, 354 Md. 18, 55, 729 A.2d 354, 374 (1999). On the other hand, the "malice" necessary to prevent the application of State personnel immunity has

been defined as "behavior characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." Newell v. Runnels, 407 Md. 578, 636, 967 A.2d 729, 763 (2009) (cleaned up). Given these very different definitions of "malice," Ms. Rovin's allegation of "malice" as an element of malicious prosecution is not an allegation of "malice" that would defeat the application of State personnel immunity.

In addition to the complaint, other filings by Ms. Rovin make clear that she has not alleged that the existence of malice prevents the application of State personnel immunity. Indeed, in the opposition to the officers' motion to dismiss or for summary judgment, Ms. Rovin stated that, although she reserved the right to do so if she uncovered corroborating evidence during discovery, she did not allege that any of the officers acted with malice or gross negligence for purposes of the MTCA.[14] Similarly, on brief, Ms. Rovin acknowledges that Petitioners are likely correct that the prosecutors and officers are entitled to State personnel immunity but asserts that Petitioners' contention that the MTCA applies constitutes an admission that the State is accepting civil liability on behalf of the prosecutors and the officers.

Contrary to Ms. Rovin's suggestion, Petitioners have simply pointed out that, because Ms. Rovin has not alleged malice or gross negligence, the officers, as well as the prosecutors, are entitled to State personnel immunity. Petitioners have not conceded that the State will ultimately be civilly liable for the individual Petitioners' actions. Moreover,

---

[14]Although the issues of malice and gross negligence are generally determined by the trier of fact, the grant of summary judgment based on the application of State personnel immunity is not precluded where neither malice nor gross negligence has been alleged in the first instance.

where a plaintiff tries to hold the State civilly liable for the actions of an individual who is entitled to State personnel immunity, where the individual is also entitled to a form of absolute immunity, such as prosecutorial immunity, neither the individual nor the State is civilly liable, notwithstanding the MTCA. See Parker, 337 Md. at 286, 653 A.2d at 443. Thus, as previously explained, because Maciarello and Assistant State's Attorney Brueckner are entitled to prosecutorial immunity, the State is not civilly liable for their actions in this case.

As a final matter about the MTCA, we note that the circumstance that Ms. Rovin sued the officers and the prosecutors in their official capacities does not deprive them of State personnel immunity. The application of immunity under the MTCA does not depend on whether the plaintiff sues an individual in an official capacity or an individual capacity. See Higginbotham v. Pub. Serv. Comm'n of Md., 412 Md. 112, 129-30, 985 A.2d 1183, 1192-93 (2009). An individual who qualifies for State personnel immunity under the MTCA would be entitled to such immunity regardless of whether a complaint states that the individual is sued in an official or individual capacity.

The conclusion that a plaintiff suing an individual in an "official capacity" does not preclude State personnel immunity, if applicable, is warranted by the purpose of the immunity, which is "to insulate State employees generally from tort liability if their actions are within the scope of employment and without malice or gross negligence." Higginbotham, 412 Md. at 130-31, 985 A.2d at 1193 (cleaned up). Nothing in the MTCA's plain language, or our case law interpreting the MTCA, alludes to the notion that suing a defendant in an official capacity precludes State personnel immunity. Indeed, such a

- 45 -

principle would allow a plaintiff to easily defeat the purpose of State personnel immunity and improperly maintain an action against defendants who might be entitled to immunity. Such a principle would also nullify the MTCA's plain language, in that, by definition, an individual who is entitled to State personnel immunity was necessarily acting within the scope of employment—*i.e.*, acting in his or her official capacity—at the time of the alleged torts or constitutional violations. See SG § 12-105; CJ § 5-522(b). Simply put, the MTCA's plain language and purpose, as well as our case law, make clear that suing a defendant in an official capacity does not defeat State personnel immunity. See Higginbotham, 412 Md. at 130, 985 A.2d at 1193.

## II.

### The Parties' Contentions

Petitioners contend that Ms. Rovin's claims based on the officers' actions fail because the officers acted on a reasonable, good faith belief that her conduct violated the juror intimidation statute. Petitioners argue that this case presents an issue of first impression—namely, whether liability can attach to an officer who makes an arrest based on a reasonable, good faith belief that the conduct in question was criminal after conferring with prosecutors and obtaining a warrant from a District Court Commissioner. Petitioners assert that, although no Maryland case is directly on point, case law regarding an officer's state of mind when making an arrest indicates that an officer is not civilly liable for applying for charges and obtaining an arrest warrant based on a reasonable, good faith mistake of law. Citing Heien, 574 U.S. 54, and the Restatement (Second) of Torts 662, cmt on clause (b) i (1977), Petitioners contend that this Court should "bring Maryland in

- 46 -

line with law" from the Supreme Court indicating that probable cause may exist where an accused avoids conviction due only to a court interpreting a statute in a manner that is not readily apparent.

Petitioners contend that Ms. Rovin's claims for false arrest, false imprisonment, malicious prosecution, and violations of due process fail because the officers had legal justification for the arrest and charges and executed a facially valid arrest warrant. Petitioners contend that Ms. Rovin has not alleged that the officers made material omissions or misstatements of fact in the arrest warrant application, and, accordingly, has not alleged bad faith. Petitioners argue that the claim for malicious prosecution fails because there was probable cause for Ms. Rovin's arrest.

Additionally, Petitioners contend that Ms. Rovin's claims for false light invasion of privacy and defamation fail because she cannot demonstrate that any statement that Sheriff Lewis made was false. Petitioners assert that both defamation and false light invasion of privacy are causes of action that include the element of falsity—*i.e.*, "in both causes of action a 'false' statement is one 'that is not substantially correct'"—and that Ms. Rovin has failed to demonstrate the element of falsity as to both claims.

Ms. Rovin responds that this Court should rely on Maryland case law in evaluating the viability of her claims against the officers and that, under Maryland law, probable cause cannot support an arrest where the facts of the case did not constitute a crime as a matter of law. Ms. Rovin contends that, in any event, the viability of her claims does not depend on whether this Court uses the reasonableness test discussed by the Supreme Court in Heien because the officers in this case made mistakes of law that were objectively unreasonable.

Ms. Rovin asserts that Petitioners' arguments as to the officers acting reasonably and in good faith are based on facts and the arguments are not capable of determination in Petitioners' favor on summary judgment.

Ms. Rovin contends that the officers' mistake of law was objectively unreasonable because the warrant affidavit facially lacked probable cause and her actions were indisputably not criminal. Ms. Rovin argues that it was objectively unreasonable to believe that she violated CR § 9-305(a) because, when she visited Mr. Rovin, he was no longer a juror and had finished performing his official duties. Ms. Rovin contends that she should have been permitted to conduct discovery because the record lacks evidence to support Petitioners' position as to both reasonableness and good faith. Respondent argues that the Court of Special Appeals violated the standard of review of a trial court's grant of summary judgment by drawing factual inferences as to good faith in Petitioners' favor.

Lastly, Ms. Rovin argues that we should not address Petitioners' position that her claims for defamation and false light invasion of privacy fail because, according to Ms. Rovin, Petitioners did not raise the issue in the petition for a writ of *certiorari*. As to merits, Ms. Rovin asserts that her defamation claim is based on Sheriff Lewis's statement to the media that she was an "egregious criminal." Ms. Rovin maintains that falsely accusing someone of committing a crime necessarily constitutes defamation and false light invasion of privacy.

**Law**

Section 662 (Existence of Probable Cause) of the Restatement (Second) of Torts (1977) addresses how to determine whether a plaintiff in a malicious prosecution case has

established a lack of probable cause.  The section begins as follows:

> One who initiates or continues criminal proceedings against another has probable cause for doing so if he correctly or reasonably believes
>
> (a) that the person whom he accuses has acted or failed to act in a particular manner, and
>
> (b) that those acts or omissions constitute the offense that he charges against the accused, and
>
> (c) that he is sufficiently informed as to the law and the facts to justify him in initiating or continuing the prosecution.

Comment i specifically addresses mistakes of law, stating in pertinent part:

> Less frequently than in the case of mistake of fact, a mistaken belief as to the legal consequences of the conduct in question may afford probable cause for criminal proceedings.  In the ordinary case a layman, aware of his own ignorance of the law, will not be justified in initiating the proceedings unless he has been advised to do so by an attorney, in which case he will be protected under the rule stated in § 666.[15]  This includes advice from a prosecuting attorney.  But if the layman elects to proceed without this advice, he is ordinarily not acting as a reasonable man and does not have probable cause, since he knows or reasonably ought to know that he does not, as stated in Clause (c) of this Section, have sufficient information to justify him in

---

[15]Section 666 (Effect of Advice of Counsel) of the Restatement (Second) of Torts (1977) states in pertinent part:

> (1) The advice of an attorney at law admitted to practice and practicing in the state in which the proceedings are brought, whom the client has no reason to believe to have a personal interest in obtaining a conviction, is conclusive of the existence of probable cause for initiating criminal proceedings in reliance upon the advice if it is
>
> > (a) sought in good faith, and
> >
> > (b) given after a full disclosure of the facts within the accuser's knowledge and information.

taking the step.[16]

Heien, 574 U.S. at 57, is a criminal case in which the Supreme Court held that the reasonable articulable suspicion necessary to support a traffic stop can be based on a reasonable mistake of law. In Heien, a law enforcement officer stopped a vehicle because one of its two brake lights was out. See id. The defendant filed a motion to suppress, which a trial court denied after conducting a hearing at which the officer testified. See id. at 58. The Court of Appeals of North Carolina reversed, concluding that driving with one working brake light did not violate the relevant North Carolina statute. See id. at 58-59. The Supreme Court of North Carolina reversed the judgment of the Court of Appeals and determined that the officer's mistake of law was reasonable. See id. at 59.

The Supreme Court of the United States affirmed the judgment of the North Carolina Supreme Court and concluded that reasonable suspicion for a stop may be based on a law enforcement officer's reasonable mistake of law. See id. at 67-68. The Supreme Court observed that it had previously held that a search or seizure based on a mistake of fact can be reasonable, and thus not violate the Fourth Amendment. See id. at 61. The

_____

[16]The modern counterpart to Section 662 (Existence of Probable Cause) of the Restatement (Second) of Torts (1977) is Section 22 (Probable Cause to Initiate Criminal Proceedings) of the Restatement (Third) of Torts: Liability for Economic Harm (2020). Comment c addresses mistakes of law, stating in pertinent part:

> A party who accused the plaintiff of a crime based on a mistaken belief that the plaintiff's actions were criminal will ordinarily be found to have made the accusation without probable cause. An accuser should be well-informed on the law or realize that more remains to be learned. A mistake of law may be considered reasonable, however, if the accuser relied on the advice of a lawyer, including a prosecutor.

- 50 -

Supreme Court determined that the same should be true of a search or seizure based on a mistake of law, stating:

> [R]easonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: The facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

Id. The Supreme Court was unpersuaded by the defendant's reliance on the maxim that "Ignorance of the law is no excuse," explaining:

> Just as an individual generally cannot escape criminal liability based on a mistaken understanding of the law, so too the government cannot impose criminal liability based on a mistaken understanding of the law. If the law required two working brake lights, [the defendant] could not escape a ticket by claiming he reasonably thought he needed only one; if the law required only one, [the law enforcement officer] could not issue a valid ticket by claiming he reasonably thought drivers needed two. But just because mistakes of law cannot justify either the imposition or the avoidance of criminal liability, it does not follow that they cannot justify an investigatory stop. And [the defendant] is not appealing a brake-light ticket; he is appealing a cocaine-trafficking conviction as to which there is no asserted mistake of fact or law.

Id. at 67. The Supreme Court reviewed the relevant North Carolina statute and agreed that the officer's mistake of law was reasonable. See id.

As to the scope of appellate review, Maryland Rule 8-131(b)(1) provides in pertinent part that this Court "ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition[.]" Although Maryland Rule 8-131(b)'s use of the word "ordinarily" demonstrates that this Court has the discretion to address an issue

that was not raised in a petition for a writ of *certiorari*, this Court may exercise that discretion only "where extraordinary circumstances provide a reason to do so." Scott v. State, 454 Md. 146, 189, 164 A.3d 177, 202 (2017) (cleaned up). Consistent with the general principle that Maryland Rule 8-131(b)(1) sets forth, in several cases, citing that provision, this Court has chosen not to address matters that were not raised in a petition for a writ of *certiorari*. For example, in State v. Shortall, 463 Md. 324, 339-40, 205 A.3d 985, 993-94 (2019), this Court declined to consider an argument regarding the sufficiency of the evidence that was not raised in the petition for a writ of *certiorari*. In Lillian C. Blentlinger, LLC v. Cleanwater Linganore, Inc., 456 Md. 272, 299, 173 A.3d 549, 564 (2017), this Court concluded that an issue regarding the validity of a statutory provision that was not raised in the petition for a writ of *certiorari* was not properly before this Court, and would not be considered. In Williams v. Peninsula Reg'l Med. Ctr., 440 Md. 573, 577 n.3, 103 A.3d 658, 661 n.3 (2014), this Court declined to address an issue regarding an allegedly heightened pleading standard that was not raised in the petition for a writ of *certiorari*. And, in Hobby v. State, 436 Md. 526, 542–43, 83 A.3d 794, 803 (2014), this Court declined to consider a contention regarding exerting unauthorized control that was not raised in the petition for a writ of *certiorari*.

**Analysis**

Here, we decline Petitioners' request that we apply the Supreme Court's holding in Heien, 574 U.S. 54, to the officers' conduct in this case as Heien was not relied upon by Petitioners in either the circuit court or the Court of Special Appeals and, as such, was not part of the grounds on which the circuit court granted summary judgment in the case. In

the circuit court, in neither the motion to dismiss or for summary judgment nor the reply to the opposition to the motion did the State request that the circuit court grant summary judgment based on the Supreme Court's holding in Heien. Nor did the State cite the Supreme Court's holding in Heien as a ground for affirming the circuit court's grant of summary judgment in the State's brief in the Court of Special Appeals.

Similarly, in the circuit court, in their motion to dismiss or for summary judgment, the officers did not raise an issue as to the grant of summary judgment based on the Supreme Court's holding in Heien. And, like the State, the officers did not cite the Supreme Court's holding in Heien in the Court of Special Appeals as a basis for affirming the circuit court's grant of summary judgment. Before this Court is the first instance in which Petitioners have cited Heien and argued that, where an officer obtains an arrest warrant based on an objectively reasonable mistake of law, the officer may not be held civilly liable for the arrest.

To be sure, on brief in the Court of Special Appeals, the State argued that the claims arising from the actions of the officers fail because those actions were based on a good faith belief that Ms. Rovin's undisputed conduct fell within the scope of the juror intimidation statute. But, Petitioners did not rely on the rationale undergirding the Supreme Court's holding in Heien, *i.e.*, that reasonable articulable suspicion or, in this case, probable cause, may be based on an objectively reasonable mistake of law, and that Heien translates into officers not being liable in a civil case. And neither was this the circuit court's basis for the grant of summary judgment.

As described above, Heien, 574 U.S. at 57, is a criminal case in which the Supreme

Court held that the reasonable articulable suspicion necessary to support a traffic stop can be based on a reasonable mistake of law. In <u>Heien</u>, <u>id.</u> at 67, the Supreme Court explained that the existence of an objectively reasonable mistake of law would not serve to undermine a determination that reasonable articulable suspicion existed for a stop. A determination as to an objectively reasonable mistake of law involves an examination of the statute at issue and a determination that a reasonable person could have interpreted the statute, as the officers allegedly did, to prohibit the conduct complained of.

None of Petitioners' filings in the circuit court even mention <u>Heien</u>, let alone include Petitioners' assertion on brief in this Court that Ms. Rovin's claims against the officers failed because they acted on the objectively reasonable belief that Ms. Rovin violated the juror intimidation statute. Nor did the circuit court independently rely on <u>Heien</u> in granting summary judgment.

We must be cognizant of the "general rule that in appeals from the granting of a motion for summary judgment, absent exceptional circumstances, Maryland appellate courts will only consider the grounds upon which the lower court granted summary judgment[.]" <u>Bishop v. State Farm Mut. Auto Ins.</u>, 360 Md. 225, 234, 757 A.2d 783, 787-88 (2000) (citation omitted). To be sure, because this is a general rule rather than an absolute one, there are exceptions. For example, we have indicated that an appellate court may affirm on a different ground where the trial court would have had no discretion to deny summary judgment as to that ground. <u>See</u> <u>Wireless One, Inc. v. Mayor & City Council of Baltimore</u>, 465 Md. 588, 614 n.6, 214 A.3d 1152, 1167 n.6 (2019). We have also indicated that an appellate court may affirm on a different ground where the "two

grounds are so interrelated that they cannot be properly considered as separate and distinct[.]" Ross v. State Bd. of Elections, 387 Md. 649, 659, 876 A.2d 692, 698 (2005) (citation omitted). In this case, neither of these exceptions to the general prohibition on affirming on a different ground cause us to address Petitioners' contention regarding Heien. Without having mentioned the case in the circuit court or the Court of Special Appeals, Petitioners ask us to interpret the Supreme Court's holding in Heien to give the officers an exemption from civil liability. We decline to do so and shall return the case to the circuit court for a determination as to whether Heien is applicable to the circumstances of this case.

Next, we briefly turn to whether the circuit court properly granted summary judgment with respect to the claims for defamation and false light invasion of privacy irrespective of any immunity of the officers. On this point, we affirm the judgment of the Court of Special Appeals insofar as it vacated the grant of summary judgment as to Ms. Rovin's claims for defamation and false light invasion of privacy and remanded for discovery as to those claims. See Rovin, 2020 WL 3265119, at *9. Petitioners did not raise an issue in the petition for a writ of *certiorari* as to whether summary judgment was properly granted for the claims of defamation and false light invasion of privacy on the ground that she failed to establish the element of falsity. Therefore, pursuant to Maryland Rule 8-131(b)(1), Petitioners' contention that the Court of Special Appeals erred in reversing the grant of summary judgment on the ground that Sheriff Lewis's statements were not false is not before this Court.

**CONCLUSION**

For the above reasons, we conclude that the circuit court correctly granted summary judgment in favor of Maciarello, Assistant State's Attorney Brueckner, and the State as to any actions alleged in the complaint to have been taken by the prosecutors, as the prosecutors are entitled to absolute prosecutorial immunity. The judgment of the Court of Special Appeals is reversed as to the claims against the prosecutors and the State based on the prosecutors' alleged actions.

State personnel statutory immunity under the MTCA, though, bars Ms. Rovin's claims against Sheriff Lewis and Deputy Cook, as well as the prosecutors, in their individual capacities. Accordingly, the State does not have immunity under the MTCA, but whether the State is liable for any actions of the officers, who do not have absolute common law immunity, is a matter to be resolved after further proceedings in the circuit court. The circuit court erred in granting summary judgment as to the State based on the actions of the officers, as the officers are not entitled to absolute judicial or prosecutorial immunity. As such, all of the claims in the complaint against the State based on the alleged actions of the officers remain, and the judgment of the Court of Special Appeals is affirmed in that regard.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED IN PART AND AFFIRMED IN PART AS STATED IN THE OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

IN THE COURT OF APPEALS

OF MARYLAND

No. 29

September Term, 2020

_____

STATE OF MARYLAND, ET AL.

v.

VALERIE ROVIN

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by McDonald, J.,
concurring in the judgment.

_____

Filed: March 2, 2021

I agree with most of the Court's very thorough opinion in this case. And I have no problem with a disposition that sends the case back to the circuit court, although in my view we could resolve all of the remaining counts that relate to probable cause for the prosecution – *i.e.*, the counts other than the defamation and false light counts – without remanding. Those claims turn on whether the deputy sheriff who arrested Ms. Rovin was at fault for executing the arrest warrant based on an error of law. The asserted error of law relates to the breadth of the juror intimidation statute (Maryland Code, Criminal Law Article, §9-305) at the time that the warrant was issued and executed. Several lawyers and judicial officers – the District Court judge in the peace order hearing, the prosecutors in the State's Attorney's Office, the District Court Commissioner – each opined that the facts alleged by the victim fell within the juror intimidation statute. Only the trial judge at Ms. Rovin's criminal trial reached a different conclusion. The basis for the trial judge's conclusion was that the victim of the alleged intimidation had concluded his service at the trial of Ms. Rovin's daughter, even though (as alleged in the statement of charges) he remained an active member of the jury pool at the time of the incident. That legal conclusion was a questionable interpretation of §9-305, as the circuit court below indicated,[1] and was never reviewed by an appellate court because, of course, the State cannot appeal an acquittal. Even if one were to conclude that the trial judge in Ms. Rovin's criminal case was correct as to the breadth of §9-305, it was not the role of the deputy sheriff to foresee the future and overrule the legal judgments of the State's Attorney who

---

[1] Record Extract at E.34.

authorized the prosecution and arrest and the judicial officer who ordered the arrest by issuing the warrant.

However, as the Court's opinion correctly points out, an appellate court in Maryland typically will not affirm a grant of summary judgment on a ground different from that on which the circuit court relied and instead will remand to the circuit court to consider the alternative ground in the first instance. I suppose the wisdom of that unwritten rule, which is somewhat peculiar to Maryland, could be questioned, but that is a question for another day as it has not been briefed in this case. Accordingly, I concur in the judgment.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/29a20cn.pdf